LEON *v.* DETROIT HARVESTER COMPANY.

1. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENT—EXTENSIONS—VACATION PAY.

Recovery, if any, for vacation pay under extension of collective bargaining agreement would be limited to the period during which the extension was in effect.

2. SAME—CONSTRUCTION OF EXTENSION OF BARGAINING AGREEMENT— VACATION PAY.

Vacation pay provisions of extension of collective bargaining agreement are construed as requiring payment of pro rata benefits upon expiration of extended agreement, in determining intent of parties to the agreement so as to give effect to all provisions of the extension agreement as of the time the extensions were made.

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted January 12, 1961. (Docket No. 30, Calendar No. 47,573.) Decided June 29, 1961.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 31 Am Jur, Labor §§ 104, 111.
    Construction and effect of vacation pay clause in collective labor agreement. 30 ALR2d 351.
    Construction and effect of termination and automatic renewal provisions in collective bargaining agreements. 17 ALR2d 754.

Action by Philip Leon, in his own right and as assignee of 49 others, against Detroit Harvester Company, a Michigan corporation, their former employer, for vacation pay agreed in union contract and by reason of extensions thereof. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Philip A. Gillis,* for plaintiff.

*Crawford, Sweeny, Dodd & Kerr,* for defendant.

SOURIS, J. Plaintiff and 49 others, for whom he sues as assignee, were employed by defendant company. The labor union which represented them had a collective bargaining agreement with defendant which covered the periods from September 29, 1952, to September 29, 1953, and from that date to September 29, 1954. Before the latter date negotiations commenced between the contracting parties for a new agreement and just prior to the expiration date it was extended by mutual agreement first, for a 30-day period, then for varying periods from time to time during continuing negotiations until it was allowed to expire on March 13, 1955. Thereafter, plaintiff and his assignors continued to work for defendant but without a collective bargaining agreement. It was stipulated at the trial that defendant's operations were unprofitable and that, for that reason, by the end of May, 1955, it had ceased operations and had discharged plaintiff and all of his assignors.

Suit was brought to recover unpaid vacation pay benefits claimed due under the expired collective bargaining agreement which provided, in part, as follows:

"ARTICLE 7—ANNUAL VACATION
"Sec. 1. Employees who on July 1st have been in the employ of the company for 1 year, and less

than 3 years, and who, during the preceding 12 months, have worked not less than 75% of the available working time, shall receive 1 week's vacation, with pay. Employees who on said date have been in the employ of the company for 3 years, but less than 5 years, and who, during the preceding 12 months have worked not less than 75% of the available working time, shall receive 50 hours' vacation, with pay. Employees who on said date have been in the employ of the company for 5 years or more, and who during the preceding 12 months have worked not less than 75% of the available working time, shall receive 2 weeks' vacation, with pay.

"(A) Employees who on said date have been in the employ of the company 15 years or more, and who, during the preceding 12 months have worked not less than 75% of the available working time, shall receive 3 weeks' vacation, with pay.

"Sec. 2. Vacation pay shall be computed by multiplying the employee's regular straight time hourly earnings by the number of hours the plant is regularly scheduled to operate, not exceeding 48 hours per week.

"Sec. 3. The vacation period for all hourly rated employees shall be from June 1st to September 15th. In computing eligibility for vacation hereunder, any employee whose anniversary date of hiring falls within the dates of the vacation period shall be deemed to be eligible for the maximum period as provided for in section 1 above, irrespective of actual date of such employee's vacation."

Although the declaration is not entirely clear on the point, the pretrial statement limited plaintiff's claims to vacation pay benefits on a pro rata basis for the period immediately preceding March 13, 1955, the expiration date of the agreement. In his brief on appeal, however, plaintiff claims he is entitled to benefits computed as of the date he and each of his assignors respectively terminated their employment with defendant. The circuit judge who tried

the case on stipulated facts entered a judgment of no cause of action and did not squarely determine the scope of plaintiff's claims for relief. On appeal plaintiff asserts as 1 basis for recovery that if the contract is construed to require employment by defendant on July 1st as a condition precedent to qualification for vacation pay benefits, the condition should be deemed waived to permit payment on a pro rata basis, at the very least, because he and his assignors were prevented by their discharge by defendant, through no fault of their own, from compliance with the condition.

This argument overlooks the fact that at the time of discharge the collective bargaining agreement was no longer in effect. In the absence of any proof of an agreement, express or implied, by defendant to pay its employees vacation pay benefits during the terminal period from March 13, 1955, to the dates of their discharge, there is no basis upon which plaintiff can claim such benefits for that period. We conclude that plaintiff's claims must stand or fall upon the collective bargaining agreement for the period immediately preceding March 13, 1955, the date of the agreement's expiration.

Plaintiff contends in his brief that the language of section 1 of the agreement is ambiguous and, therefore, justifies construction to permit qualification for vacation pay benefits even in the absence of employment on July 1st. Whatever merit there may be in plaintiff's contention of contractual ambiguity, his argument applies only to the collective bargaining agreement upon its execution and during the 2 full 1-year periods it was in effect. But, on September 29, 1954, the parties thereto extended the agreement for 30 days, and again subsequently for varying periods of time until it was allowed to expire on March 13, 1955. We are not here concerned with what the parties intended in September of 1953. We

are concerned with what the parties contemplated with reference to vacation pay benefits when the contract was extended in September of 1954 until October 29, 1954. It is, of course, as of the extension dates we must construe the language to determine the intention of the parties. *Klever* v. *Klever,* 333 Mich 179, and *Sobezak* v. *Kotwicki,* 347 Mich 242. The vacation pay provisions of the contract, considered as of the dates of extensions, have no meaning whatever unless they are construed to require payment of pro rata benefits upon expiration of the extended agreement. That the parties so intended logically follows analysis of the provisions of the contract as of the dates of its extensions.

On September 29, 1954, when it was mutually extended for 1 month, both parties knew that article 7 quoted above could never be *fully* implemented for any of the defendant's employees because the extension was scheduled to expire before the next June 1st, the first date any employee could claim full vacation pay benefits under section 3. In construing this contract as of the various dates of its extensions, we must give effect to all of its provisions if it is possible to do so. *Galperin* v. *Michelson,* 301 Mich 491; *Duval* v. *Aetna Casualty & Surety Co.,* 304 Mich 397; *City of Detroit* v. *A. W. Kutsche & Co.,* 309 Mich 700; *Singer* v. *Goff,* 334 Mich 163; *Burton* v. *Travelers Insurance Co.,* 341 Mich 30; *Associated Truck Lines, Inc.,* v. *Baer,* 346 Mich 106. It does no violence to the language of article 7 to construe it, as we do, to require payment of pro rata vacation pay benefits earned by defendant's employees up to the dates of expiration of the various extension agreements culminating with the final extension which expired on March 13, 1955. Not to construe the extension agreements in that fashion would require us to say that the parties attributed no rational meaning to the words of article 7.

Our ruling in this case is not inconsistent with our ruling or our reasoning in *Treloar* v. *Steggeman,* 333 Mich 166. In that case, this Court held the contractual language specifically required an employee to be on the company's seniority list on a specified future date as a condition precedent to qualification for compensation in lieu of vacation. The future date specified in the contract, on the date of its execution, was clearly within the contemplation of the parties a date which would occur within the normal term of the contract. The fact that the contract was terminated legally prior thereto cannot alter the meaning of the language as intended by the parties when the contract was made. In the case at bar, our concern is likewise with the parties' intention, but that must be determined as of the time of extension, not as of the time the contract was first made.

We have been referred to a substantial number of authorities in other jurisdictions which seem to be in irreconcilable conflict (many of which are assembled in 30 ALR2d 351). Differences in contractual language used makes citation of these cases as authority extremely risky unless caution and discrimination are exercised. No case has been cited to us, and we have found none, which involves construction of a similar contractual provision as part of a short term extension agreement.

Judgment reversed and cause remanded for further proceedings in accordance with this opinion. Costs to plaintiff.

Smith, Black, Edwards, and Kavanagh, JJ., concurred with Souris, J.

Carr, J. (*dissenting*). The parties are not in disagreement as to the material facts involved in this controversy. It is conceded that during the year

beginning September 29, 1953, there was in force and effect a collective bargaining agreement between defendant company and Local 155, UAW-CIO, representing defendant's employees at its Warner division. By the terms of said agreement, which was comprehensive in its provisions, various matters pertaining to the employment relation were governed, including wages, grievance procedure, and other details.

Article 7 of said contract, directly involved in the instant case, related to the matter of annual vacations. Insofar as material, it read as follows:

### "ARTICLE 7—ANNUAL VACATION

"Sec. 1. Employees who on July 1st have been in the employ of the company for 1 year, and less than 3 years, and who, during the preceding 12 months, have worked not less than 75% of the available working time, shall receive 1 week's vacation, with pay. Employees who on said date have been in the employ of the company for 3 years, but less than 5 years, and who, during the preceding 12 months have worked not less than 75% of the available working time, shall receive 50 hours' vacation, with pay. Employees who on said date have been in the employ of the company for 5 years or more, and who during the preceding 12 months have worked not less than 75% of the available working time, shall receive 2 weeks' vacation, with pay.

"(A) Employees who on said date have been in the employ of the company 15 years or more, and who, during the preceding 12 months have worked not less than 75% of the available working time, shall receive 3 weeks' vacation, with pay.

"Sec. 2. Vacation pay shall be computed by multiplying the employee's regular straight time hourly earnings by the number of hours the plant is regularly scheduled to operate, not exceeding 48 hours per week.

"Sec. 3. The vacation period for all hourly rated employees shall be from June 1st to September 15th.

In computing eligibility for vacation hereunder, any employee whose anniversary date of hiring falls within the dates of the vacation period shall be deemed to be eligible for the maximum period as provided for in section 1 above, irrespective of actual date of such employee's vacation."

Pursuant to the termination clause of the agreement, defendant under date of July 16, 1954, gave notice to the union that such agreement would be ended as of September 28th following. Thereafter 4 extension agreements were made for varying periods of time, the last such extension expiring by its own limitation on March 13, 1955. In the latter part of May, 1955, defendant ceased operations at its Warner division, due to the fact that the conduct of its business there was resulting in financial loss. No question is raised that such closing was fully justified under the circumstances.

As a result of the closing down of the Warner division plaintiff who had been an employee of defendant ceased to be such. He brought this action in the circuit court of Wayne county claiming the right to recover on the basis of the written contract between the union and defendant, particularly the provisions thereof above quoted with reference to vacations with pay. Plaintiff claimed also as the assignee of 49 other employees similarly situated. No question is raised as to the claim of plaintiff that he is entitled to represent his assignors as well as himself.

As appears from the pretrial statement, it was plaintiff's theory in circuit court that the provisions of the contract above quoted in effect granted additional compensation, and that the extensions of said contract carried with them the right to receive vacation pay in lieu of the vacation with pay as specified. Defendant contended that operations at the Warner division having ceased in May preceding the 1st of July, 1955, there were no employees on the latter

date, and that the requirements and conditions of article 7 of the contract between defendant and the union representing the employees were not met. Briefs were filed in the trial court setting forth at some length the claims of the respective parties, following which the trial judge in a written opinion indicated that he considered the decision of this Court in *Treloar* v. *Steggeman,* 333 Mich 166, as controlling. Accordingly judgment was entered in favor of the defendant, and plaintiff has appealed.

The language of the contract on which plaintiff based his right to recover was not ambiguous. In terms it provided for vacations for employees with various lengths of service, the right to such vacations being fixed as of July 1st. There was no provision therein for prorating vacation pay in the event of termination of employment, for a reason of the character involved in the instant case, prior to said date. Clearly the reference is to employees who were such on the date specified. In *Treloar* v. *Steggeman, supra,* the agreement between the union, representing the plaintiff, and the defendant employer provided specifically for vacation pay. It fixed the eligibility date as of December 1, 1947, and the period of employment at not less than 6 months. Commenting on the situation it was said in the unanimous opinion of this Court (p 170):

"Plaintiff claims that the agreement should be liberally construed in his favor. The agreement clearly prescribed a condition precedent to vacation pay that the employee shall be on the seniority list on December 1, 1947, as well as having completed at least 6 months' work since December 1, 1946. The 2 conditions precedent are clearly stated and there is no doubtful meaning to be resolved in plaintiff's favor. We must apply the clear provisions of the agreement as we find them. It was competent for the parties to fix and agree upon December 1, 1947,

as the eligibility date and it is not for the court to advance the eligibility date to suit the convenience or wishes of 1 party to the agreement. It is not for us to review or redetermine the considerations that led to the fixing of the date as December 1, 1947.

"Plaintiff and his assigns have failed to qualify under the requirements of the agreement and are not entitled to vacation pay."

In the case at bar counsel for appellant suggests that the *Treloar Case* should be overruled. We are not impressed with the reasons advanced in support of such contention. In the final analysis the Court in dealing with a contract which was clear and unambiguous construed it as written by the parties, thus following the established rule of interpretation. It is generally recognized that courts are not at liberty to alter the terms of such a contract or to interpolate provisions that the parties have not seen fit to insert. The function of the court in a case of this nature is to interpret the contract rather than to attempt to remake it.

In *Gaw* v. *LaPorte Corporation,* 126 Ind App 143 (130 NE2d 790), there was involved the construction of a contract analogous to that in the case at bar. There the plaintiff brought suit to recover vacation pay, relying on an agreement between defendant employer and the bargaining agent for the employees. Said agreement fixed the vacation period as beginning June 1st and ending September 30th, inclusive. Plaintiff's employment terminated on January 23d of the year in question. In holding that plaintiff was not entitled to recover, it was said (pp 147, 148):

"A court is not at liberty to revise a contract while professing to construe it. Neither does it have the right to make a contract for the parties, that is, a contract different from that actually entered into by them. It is the duty of this court to construe the contract under consideration as made and to

give full force and effect to the language used when it is clear and unambiguous, such as this contract is. *Miles* v. *Indiana Service Corp.* (1933), 97 Ind App 400 (185 NE 460) ; *Bowman* v. *Bradley* (1892), 151 Pa 351 (24 A 1062, 17 LRA 213) ; *Schneider* v. *Turner* (1889), 130 Ill 28 (22 NE 497, 6 LRA 164) ; *McQuillan* v. *Mutual Reserve Fund Life Association* (1901), 112 Wis 665 (87 NW 1069, 56 LRA 233, 88 Am St Rep 986) ; *Page* v. *Sun Insurance Office* (CCA8, 1896), 74 F 203 (33 LRA 249).

"Neither abstract justice nor the rule of literal construction justifies the creation of a contract for the parties which they did not make for themselves or the imposition upon 1 party to a contract of an obligation not assumed."

A like conclusion was reached in *Botany Mills, Inc.,* v. *Textile Workers Union of America, AFL-CIO,* 42 NJ Super 327 (126 A2d 389). There the right to vacations with pay was fixed with reference to April 15th of each year during the life of the contract between the employer and the defendant union representing plaintiff's employees. The company discontinued its operations on December 31, 1955, and notified the union shortly thereafter that it was terminating the contract in accordance with its provisions. Thereupon the union asserted a claim for vacation pay on behalf of the employees previously released and instituted arbitration proceedings. The employer sought injunctive relief which was granted. In reaching such conclusion, it was said (pp 330, 331) :

"Under article 6 of the collective bargaining agreement, no employee was entitled to vacation pay unless he was in the employ of the company on April 15th. No employee represented by the defendant union can qualify under that provision and it is not within the power of an arbitrator or the court to rewrite the contract. *Textile Workers' Union of America, Congress of Industrial Organization* v.

*Firestone Plastics Division, Firestone Rubber Co.* (App Div 1950), 6 NJ Super 235 (70 A2d 880), certification denied (1950), 4 NJ 515 (73 A2d 212)."

Unquestionably the union, acting as bargaining agent for defendant's employees in the instant case, and the defendant might have provided in the contract for the prorating of vacation pay, or the length of time of the vacation to be granted, for the benefit of employees whose status as such might be terminated before July 1st, but the fact remains that such was not done. The agreement must be construed as written. *Division of Labor Law Enforcement* v. *Mayfair Markets,* 102 Cal App2d Supp 943 (227 P2d 463). See, also, *Division of Labor Law Enforcement* v. *Anaconda Copper Mining Company,* 138 Cal App 2d 92 (291 P2d 169).

As above indicated, counsel for appellant contends that the contract between the union and defendant should be construed as contemplating a prorating of vacation pay under the circumstances here involved. For the reasons indicated such contention cannot be sustained. However, Mr. Justice Souris would reverse the holding of the trial court on the theory that the extension agreements should be construed as requiring payment of pro rata benefits for the period prior to expiration of the last extension. With such theory we cannot agree.

The first extension executed September 29, 1954, provided simply that:

"The agreement between Detroit Harvester Company, Warner Division and Local 155, International Union, UAW-CIO which will expire at 11:59 p.m., September 29, 1954, is hereby extended until 11:59 p.m., October 29, 1954."

The following 2 extensions were identical in form except as to dates. The fourth and last extension, executed December 13, 1954, read as follows:

"Following a 60-day notice of termination or modification of the company-union agreement of September 29, 1952, given July 16, 1954, and meetings having been in progress under mutually agreed 2 week extensions, it is agreed that the said contract be extended for 90 days from date with the right of either party during said period to give notice in writing of the cancellation of this extension agreement."

It will be noted that each extension agreement merely continued in effect, for the period specified, the contract between the union and defendant. Nothing was said therein indicating that the parties contemplated a modification in any way of the terms of such contract other than as to date of expiration. Like the contract itself, the memorandum covering each extension must be construed as written. There is no ambiguity. If the parties had intended a prorating of vacations, or of vacation pay, presumably provision would have been made accordingly. From the fact that nothing was said suggesting any such intention the conclusion cannot be avoided that the parties had in mind merely the continuation of the agreement governing the employment relations between defendant and those whom the union represented as bargaining agent. The Court may not infer otherwise in view of the express language of the parties and the fact that there is nothing before us indicating an intention to modify the original contract to provide for prorating vacation pay. Apparently negotiations were conducted, presumably with the hope that some arrangement might be reached pursuant to which the defendant might continue to operate the Warner division. Such efforts obviously failed. The plant was closed and the employees discharged. In such acts defendant admittedly exercised rights to which it was entitled under the circumstances.

The conditions necessary to be met in order to entitle plaintiff and his assignors to receive vacations with pay, or vacation pay, following the 1st of July, 1955, were not present in the instant case. The parties were governed as to their rights and obligations by their contract. The agreement made between the bargaining agent and the employer is specific and unambiguous. This Court may not vary it nor read into it some provision that the parties did not see fit to incorporate. As said in *Bonney* v. *Citizens' Mutual Automobile Insurance Company,* 333 Mich 435, 438, 439:

"We can neither make a new agreement for the parties nor, by addition, give it a meaning contrary to its express and unambiguous terms."

The judgment of the trial court should be affirmed.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.