**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, Plaintiff,**

v.

**ALUMINUM ALLOYS CORPORATION OF DETROIT, Defendant.**

**Civ. A. No. 29761.**

United States District Court, E. D. Michigan, S. D.

March 6, 1970.

Stephen I. Schlossberg, John A. Fillion, Bernard F. Ashe, Jordan Rossen, Michael S. Friedman, Detroit, Mich., for plaintiff.

Shirley T. Johnson, Charles E. Keller, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FREEMAN, Chief Judge.

This is an action by a labor organization on behalf of its members to recover vacation pay allegedly due from defendant employer under the provisions of a labor contract. This court's jurisdiction is based on Section 301 of the Labor-Management Relations Act (29 U.S.C. § 185). Both parties have filed motions for summary judgment.

The parties entered into a collective bargaining agreement dated April 2, 1965, which was to continue until September 1, 1965, and from year to year thereafter unless either party, upon sixty days' notice, terminated it on September 1 of any year. On September 7, 1965, the parties made a "CONTRACT EXTENSION" agreement stating that the "union contract that was entered into on April 2, 1965, and terminated on September 1, 1965," was extended until April 3, 1966, with some changes as set forth therein.

On November 10, 1965, defendant's employees went on strike, causing the physical operations of the plant to be closed down. On December 27, 1965, defendant's stockholders adopted a plan of complete liquidation of the corporation. In accordance with this plan, the physical assets of the corporation were sold on January 11, 1966. On January 16, plaintiff union was informed of the stockholders' vote and the sale of the company's assets. On January 31, defendant sent a letter to the union, giving sixty days' notice of the contract's termination. On April 24, 1966, after the contract had terminated, the union voted to end the strike. On May 16, 1966, the certificate of dissolution of the Aluminum Alloys Corporation was filed in the office of the Secretary of State in Delaware, the state of incorporation. On June 10, 1966, the notice of withdrawal of defendant corporation was filed with the Michigan Corporation and Securities Commission.

Plaintiff claims that defendant's employees, who are represented by plaintiff, are entitled to vacation pay for the period between July 1, 1965, and July 1, 1966, relying on Section 12 of Article VI of the collective bargaining agreement. Defendant argues that the employees are not entitled to any vacation pay for the period in dispute, relying on Section 9 of Article VI. For convenience, the entire text of Article VI is set forth below.

## ARTICLE VI—VACATIONS

*Section 1.* Employees with a minimum of six (6) months' seniority shall receive one-twelfth (1/12) of the vacation granted to employees with one (1) year's seniority for each month of his seniority.

(Example: Employee with nine (9) months' seniority will be granted nine-twelfths (9/12) of forty-eight (48) hours' vacation pay).

*Section 2.* Employees with one (1) year's seniority or more, but less than three (3) years' seniority shall receive *forty-eight (48) hours' vacation with pay.* The actual vacation time shall be one (1) week.

*Section 3.* Employees with three (3) years' seniority or more, but less than five (5) years' seniority, shall receive sixty-five (65) hours' vacation with pay. The actual vacation time shall be eight (8) working days.

*Section 4.* Employees with five (5) years' seniority or more shall receive ninety-six (96) hours' vacation with pay. The actual vacation time shall be two (2) weeks.

*Section 5.* Employees with twelve (12) or more years' seniority will be entitled to three weeks' vacation and one-hundred and twenty (120) hours' pay.

*Section 6.* Employees who were entitled to their respective vacation periods, whose death caused their separation, shall receive one-twelfth (1/12) of his vacation for each month worked past the previous July 1st. (Example: Employee receives his two week vacation for 1953. Died November 1, 1953. Vacation pay allowed would equal 4/12 of his last vacation, two (2) weeks.) The vacation pay shall be based upon the vacation pay last received. Vacation pay in this case shall be paid as permitted under the laws of the State of Michigan.

*Section 7.* The Company agrees to pay the vacation pay not later than the day before an employee starts his vacation.

*Section 8.* Employees will be entitled to take their vacations during the vacation period (July 1st to September 1st) unless there is an agreement in writing between the Company and the employee to take his vacation at another time.

*Section 9.* Employees who have severed for any reason, shall receive one twelfth (1/12) per month worked of their vacation based on what they would have received the previous July 1st, provided they have worked six months or more since previous July 1st.

*Section 10.* Employees not receiving their vacation pay during the vacation period specified above shall receive vacation pay not later than the first pay in September.

*Section 11.* Requests for vacation shall be made to the Personnel Department not later than May 29th. An employee recalled after May 29th will be asked if he wishes a vacation period and his selection will be so posted. Vacation schedules shall be posted as of June 1st. When one or more employees request the same vacation period which creates a conflict, the employee with the greater seniority shall have preference. Any problem arising under this section shall be settled by mutual agreement between the Company and Shop Committee.

*Section 12.* Vacation pay will not be paid to an employee who has not worked during the vacation year.

The court has examined this Article with great care and observes at the outset that it would be difficult to devise language which would more carefully camouflage the parties' intent as to what one must do to qualify for a vacation. Nowhere in this Article or any other place in the contract do the parties set forth what criteria must be met for a person to become eligible for vacation pay. Sections 1 through 5 set forth the maximum amount of vacation which an employee can receive, depending upon his seniority, if he is otherwise eligible. Section 6 deals with a situation where an employee dies during the "vacation year." Sections 7, 8, 10, and 11 are ad-

ministrative provisions. Section 9 relates to employees "who have severed for any reason" and the circumstances under which they may receive vacation pay. Section 12 deals with an employee who has not worked during the vacation year.

It is clear that the parties intended to provide some vacation pay and that they have not specifically covered the situation where the company ceases to do business, within the vacation year (July 1 to June 30).

■ The court has concluded that defendant's reliance on Section 9 set out above is misplaced. By its very terms this section deals with employees "who have severed." The court concludes that this Article was intended to cover only employees who sever or terminate their employment relationship with defendant and, perhaps, do some act as a result of which defendant would discharge them for cause. The court cannot apply this provision to the situation here where the employer terminated their employment by dissolving the corporation.

■ The court also concludes that plaintiff's reliance on Section 12 is misplaced. Section 12 does not say that the employees are entitled to vacation pay; it merely states that an employee who has not worked at all during the year is not entitled to vacation pay.

■ In attempting to determine the intent of the parties, it is important to note here that the court is interpreting a contract as of the time of its extension in September 1965. At the time of the extension the contract was not to run to the end of the then vacation year, i. e., June 30, 1966. It therefore appears to the court that the parties could not have intended that a person would have to be an employee on June 30, 1966, in order to be eligible for his vacation pay. It also seems unreasonable that the parties would intend that a person would be eligible for the entire amount of the vacation pay to which his seniority would entitle him merely by doing some work at some time during the vacation year, no matter how short this work period might be. In short, this court concludes that the vacation pay provisions of this contract have no meaning whatever unless they are construed to require the payment of pro rata benefits for the period worked up to the expiration of the extended agreement. See Leon v. Detroit Harvester Company, 363 Mich. 366, 109 N.W.2d 804 (1961).

This conclusion is strengthened by the fact that many courts, including the Court of Appeals for this Circuit, consider vacation pay to be deferred wages unless a specific contrary intent is found within the terms of the contract. Smith v. Kingsport Press, Inc., 366 F.2d 416 (6th Cir. 1966). See also In Re Wil —Low Cafeterias, Inc. (Kaftan v. Siegel), 111 F.2d 429 (2nd Cir. 1940). Also, many labor arbitrators have determined that vacation pay is deferred wages in essence. See, e. g., L. Hyman Company, Inc., 13 L.A. 801; and H. K. Porter Company, 49 L.A. 147.

For these reasons, defendant's motion for summary judgment will be denied, and plaintiff's motion for summary judgment will be granted to the extent that the employees are entitled to vacation pay on a pro rata basis for the period of time actually worked by each of them between July 1, 1965, and November 10, 1965.

An appropriate order may be submitted.