**LOCAL UNION NO. 15062, UNITED STEELWORKERS OF AMERICA, AFL–CIO and United Steelworkers of America, AFL–CIO,**

v.

**ROCKY MOUNTAIN DIVISION OF ROCKWOOL INDUSTRIES, INC., a Delaware Corporation.**

**Civ. A. No. 77–K–1176.**

United States District Court, D. Colorado.

April 9, 1979.

---

Donald P. MacDonald, Hornbein, MacDonald & Fattor, Denver, Colo., for plaintiff.

David C. Lonergan, Dallas, Tex., Jeffrey L. Smith, Cohen, Brame, Smith & Krendl, Denver, Colo., for defendant.

## ORDER

KANE, District Judge.

This matter is before the court on cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Jurisdiction of this court is based upon the provisions of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

The United Steelworkers of America, AFL-CIO is a labor organization engaged in representing employees in the steel and mining industry throughout the United States. Local Union 15062 is chartered by the United Steelworkers of America, AFL-CIO, and is a labor organization as defined by the Act. Defendant Rocky Mountain Division of Rockwool Industries, Inc. is a Delaware corporation authorized to do business in the State of Colorado and is an employer engaged in commerce as defined by the Act.

As the exclusive bargaining representative of certain production and maintenance employees employed by the defendant at its Pueblo, Colorado plant, the United Steelworkers of America, AFL-CIO, entered into a Collective Bargaining Agreement with defendant on January 6, 1976. Article XIII of said Agreement provides for the resolution of disputes between plaintiff and defendant through a grievance and arbitration procedure. The Agreement also provides that the "decision of the arbitrator shall be final and binding on both parties."

On June 22, 1977 a dispute arose between plaintiff and defendant with respect to the application and meaning of the Collective Bargaining Agreement. Plaintiff processed the grievance through the various steps of the grievance procedure as provided in Article XIII up to and including the arbitration provision. On October 17, 1977 a hearing was held before Arbitrator John Phillip Linn. On November 21, 1977 Arbitrator Linn issued his Opinion and Award wherein the plaintiff's grievance was upheld.

Plaintiff alleges that since November 21, 1977 the defendant has refused and continues to refuse to abide by the arbitrator's decision. Plaintiff further alleges that it is without adequate remedy at law and will suffer immediate and irreparable injury. In its motion, plaintiff requests the following:

1. that the award of the arbitrator be confirmed;

2. that the court issue a decree of specific performance directing defendant to comply; and

3. that judgment enter against the company for the use and benefit of Mr. Willie Vigil for such sums as he may be entitled to under the Arbitration Award, together with all losses and damages which he has sustained by reason of the company's failure to comply with the award.

The law is clear that the merits of an arbitration award are not subject to review by the courts. *United Steelworkers of America v. American Manufacturing Company,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Company,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *Mistletoe Express Service v. Motor Expressmen's Union,* 566 F.2d 692 (10th Cir. 1977), the Tenth Circuit stated:

The narrow scope of judicial review of arbitration awards was outlined by the Supreme Court in the Steelworkers trilogy . . . . The courts may not review the merits of a grievance or award . . . . An arbitration award will be enforced if "it draws its essence from the collective bargaining agreement." . . . In determining whether an award draws its essence from the Union contract, the courts have applied various tests. An

arbitrator's award must be upheld unless it is contrary to the express language of the contract, . . . or unless it is so unconnected with the wording and purpose of the * * * agreement as to " 'manifest an infidelity to the obligation of the arbitrator.' " . . . The award does not draw its essence from the agreement if "viewed in the light of its language, its context, and any other indicia of the parties' intention," it is without rational support. . . . (Citations omitted.)

*Id.* at 694. *See Amalgamated Butcher Workmen Local Union No. 641 v. Capitol Packing Company,* 413 F.2d 668 (10th Cir. 1969).

Recognizing that an arbitrator's award must be rooted in the contract, the Tenth Circuit recently held, in *International Brotherhood of Electrical Workers Local Union Nos. 12, 111, 113, 969 v. Professional Hold Drilling, Inc.,* 574 F.2d 497 (10th Cir. 1978), that:

Review of arbitration awards is strictly confined to whether the arbitrator interprets and applies the collective bargaining agreement so that his award is rooted in the agreement. So long as the Joint Conference Committee limited itself to interpreting and applying the agreement, we are obliged to give great deference to any award given. *Campo Machinery Co., Inc., v. Local Lodge No. 1926 of International Association of Machinists and Aerospace Workers,* 536 F.2d 330 (10th Cir. 1976). Where there is a broad arbitration provision in the contract, as there is in this case, we will not interfere with an arbitrator's decision unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation. *Local 1912, International Association of Machinists v. U. S. Potash Company,* 270 F.2d 496 (10th Cir. 1959).

On July 19, 1977 the General Manager of the defendant, Rocky Mountain Division of Rockwool Industries, Inc., terminated Willie Vigil's employment because, in the opinion of the company's management, Willie Vigil was physically unable to perform his job duties or the duties of any job in the bargaining unit of the plant. (Affidavit of Jack Wetherby (July 10, 1978).) Mr. Vigil and the plaintiff union protested the termination by filing a grievance. This grievance was processed according to the procedures set forth in Article XIII of the collective bargaining contract between the parties and was heard before Arbitrator John Phillip Linn on October 17, 1977.

The parties did not stipulate to the issues before the arbitrator. The company framed the issues as follows: (1) Was the discharge of Willie Vigil for just cause? and (2) If not, what is the proper remedy? The Union framed the issues as follows: (1) Did the company violate Article XIII, Sections 4 and 5 of the collective bargaining agreement when it failed to notify the grievant of his termination within the prescribed time limits?; and (2) Did the company violate the "Agreement" portion of the collective bargaining agreement, Article IV —Management, and Article VIII—Seniority, when it terminated the grievant?

The parties are not before this court to question the arbitrator's interpretation and application of the collective bargaining agreement. Their dispute involves the implementation of the award by defendant Rockwool Industries, Inc.

For our purposes, two specific provisions of the agreement between the parties are worthy of note:

ARTICLE IV—MANAGEMENT

Section 1. The Company shall retain the right to manage the plant and direct the working forces, including the right to hire, promote, transfer in accordance with the other provisions of this Agreement, discipline, suspend or discharge any employee for just cause. . . .

ARTICLE XIII—GRIEVANCE PROCEDURE

Section 6. In the event that it shall be decided at any stage of the aforementioned procedure that the discharge was not for just cause the Company shall reinstate such employee and pay the employee's regular rate of pay for the time lost because of such discharge. For purposes

of this Section, 'regular rate of pay' shall be the rate paid for the last regular job classification in which the employee is performing work at the time of his discharge.

Based upon his interpretation of the Agreement between the parties, and his findings with respect thereto, Arbitrator Linn, on November 21, 1977, rendered his opinion and award, *In the Matter of Arbitration Between Rocky Mountain Division of Rockwool Industries, Inc. and United Steelworkers of America, AFL-CIO Local Union No. 15062,* FMCS File No. 77K/19756 [hereinafter referred to as the "Opinion and Award"].

It was the conclusion of Arbitrator Linn that the company was without "just cause" to discharge the grievant. Specifically, Arbitrator Linn concluded that in the face of sharply conflicting evidence as to Willie Vigil's physical condition,[1]

> [t]he fair exercise of managerial discretion, considering the substantial ramifications for the Grievant as well as for the Company, required management to secure additional independent medical assessment of the implications of the Grievant's physical condition in light of his complete work history. That was not done, and the Arbitrator is left to determine the presence or absence of just cause for the Grievant's termination in the light of management's unreasonably limited investigation and reliance on medical evidence insufficient to overcome the much more persuasive evidence that Grievant is physically able to perform work in the bargaining unit of the Company's plant. *Opinion and Award* at 15–16.

It was Arbitrator Linn's position that the company was thus obligated to "reinstate" Willie Vigil and to pay him back pay from June 27, 1977 to the date of his reinstatement.

After receiving the arbitration award, the company's management, by letter dated November 30, 1977, directed Willie Vigil to return to work on December 1, 1977. However, it was management's opinion that there was insufficient medical evidence to conclude that Mr. Vigil could safely perform his regular job duties. Accordingly, Willie Vigil was put on the payroll and paid at the current rate of pay of his former job classification, but he was not required or allowed to perform the job duties. Defendant contends that this procedure was followed for the safety of Mr. Vigil and the protection of the company and would allow the company to secure additional medical opinion as to Mr. Vigil's physical condition.

The company's safety manager, Mr. Larry D. Smith, was then requested to secure further medical opinion concerning Mr. Vigil's condition, and the probability of his reinjuring himself if he was returned to his former job. A series of inquiries were made to doctors that had not previously examined Mr. Vigil as to Mr. Vigil's physical condition and the chances of his incurring a severe or permanent injury if he returned to his former job duties.

While the medical information referred to above was being secured, Mr. Smith asked Mr. Vigil to submit to a physical examination by two different doctors, neither of whom had previously seen Mr. Vigil. Mr. Vigil refused. Thus, in reliance on the analysis and conclusions of four doctors, only one of whom had examined Mr. Vigil

---

1. At the October 17, 1977 arbitration hearing two doctors testified as to the physical condition of Mr. Vigil. Dr. Schultz, an orthopedic specialist and Mr. Vigil's personal physician, released Mr. Vigil "without restrictions" to return to his former job on June 27, 1977. Dr. Schultz made this determination in view of the fact that Mr. Vigil would be required to lift as much as 60 pounds while standing in an awkward position. It was Arbitrator Linn's opinion that Dr. Schultz would not have released

Mr. Vigil for work if there was any significant cause for concern in the matter.

On the other hand, Dr. Ralph M. Wexler, the company doctor [not an orthopedic specialist], testified that Mr. Vigil "should not be allowed to lift more than ten pounds infrequently and that any job requiring greater lifting or involving twisting, turning, or bending exposes the Grievant to serious back trouble." *Opinion and Award* at 15.

previously,[2] the company determined that Mr. Vigil could not be returned to his former job duties until he submitted to a physical examination and the company had a medical opinion that Mr. Vigil could return to work without a serious risk of permanent injury. The company also made a written motion to Arbitrator Linn to reopen the record based on additional medical opinions that the company had secured subsequent to the November 21, 1977 Opinion and Award.[3]

On February 6, 1978 the motion to reopen the record was heard and, on May 11, 1978, Arbitrator Linn denied it in a Supplemental Opinion and Award. Upon receipt of the Arbitrator's Supplemental Opinion and Award, the company, through its attorney, David C. Lonergan, on May 17, 1978, offered reinstatement to Mr. Vigil through Plaintiff's attorney, Mr. Donald P. MacDonald, to a job in the bargaining unit classified as a Charger's Job. This job paid $.06 per hour more than Mr. Vigil's former job and, according to the defendant, is far less demanding physically. Mr. Vigil refused to accept assignment to this job.

On June 5, 1978, the company, in a letter from Jack Wetherby, directed Mr. Vigil to report to work on June 8, 1978 at 8:00 a. m. The following instructions were set forth:

> Your union has advised us of your refusal to be reinstated to the newly created charger job and your insistence on only being reinstated as an assistant batt-line operator. You are, therefore, hereby reinstated as an assistant batt-line operator

and you are instructed to report for work Thursday morning, June 8, at 8:00 o'clock. However, as previously discussed with you, because of the strenuous nature of this job, after clocking in you are directed to report to the Safety Manager, Mr. Larry Smith, who will accompany you to Dr. Harold Frost's office for a physical examination, so that both you and the company can have a doctor's assurance that you are physically able to return to this job without the serious risk that you could permanently injure your back.

Mr. Vigil reported to work at this time but refused to accompany Mr. Smith to Dr. Frost's office for the physical examination. At that time Mr. Vigil was suspended until such time as he would agree to submit to a physical.

█ It is plaintiff's position that the company has refused to abide by the arbitrator's decision since November 21, 1977 and continues so to refuse. Specifically, plaintiff contends that Mr. Vigil has neither been reinstated to his former position "as directed by the Arbitrator" nor has he received the back pay awarded him in an attempt to make him whole.

There appears to be no dispute as to Arbitrator Linn's interpretation and application of the collective bargaining agreement. Hence, this court's review is limited to determining whether the company has fulfilled its obligations under the arbitrator's award, i. e., whether the company has "reinstated" Mr. Vigil within the meaning of that award.

2. Mr. Vigil had previously been examined by his personal physician Dr. R. C. Black Schultz. There exists a disparity in the documents before the court as to whether Dr. Ralph M. Wexler had examined Mr. Vigil. In the Supplemental Opinion and Award of John Phillip Linn, dated May 11, 1978, Arbitrator Linn concludes that Dr. Schultz was the only doctor that had ever had the opportunity to examine physically Mr. Vigil. This directly conflicts with Dr. Wexler's letter to Mr. Smith, dated December 13, 1977, wherein Dr. Wexler states "Mr. Vigil has been examined by me on several occasions."

3. In a letter addressed to Dr. Wexler, dated November 30, 1977, Dr. Harold M. Frost, an

orthopedic surgeon, expressed a medical opinion of the physical condition of Mr. Vigil. His opinion was based upon a review of Mr. Vigil's x-rays and Mr. Vigil's medical history which had been supplied by Dr. Wexler.

In a letter addressed to Dr. Wexler, dated December 20, 1977, Dr. Herbert R. Markheim, an orthopedic surgeon expressed a medical opinion of the physical condition of Mr. Vigil. His opinion was similarly based upon a review of Mr. Vigil's x-rays and Mr. Vigil's medical history which had been supplied by Dr. Wexler.

In a letter addressed to Mr. Larry Smith, dated December 20, 1977, Dr. R. J. Black Schultz supplemented his earlier medical opinion of Mr. Vigil's physical condition.

In his Opinion and Award, dated November 11, 1977, the Arbitrator concluded that the company was "obligated to reinstate the grievant and to pay to him the 'regular rate of pay' for his last regular job classification." *Opinion and Award* at 17. He further ordered the company "to make such payment to Grievant from 6–27–77 to the date of his reinstatement, and to otherwise make the Grievant 'whole' without loss of seniority or other contractual benefits." *Id.*

In rendering his opinion and award, the arbitrator expressly retained jurisdiction to resolve disputes arising in the company's implementation of said award. On January 6, 1978 counsel for the company requested Arbitrator Linn to resolve disputes which had arisen between the parties involving the implementation of the November 21, 1977 award.

Company counsel designated that a dispute had arisen between the parties as to the (1) specific dollar amounts of back pay which the Grievant had been awarded; and (2) as to whether the Grievant should be returned to work "in view of the Arbitrator's clear misinterpretation of Dr. R. J. Schultz's worker release, as confirmed by Dr. Schultz in his letter dated December 13, 1977. . . . "

In the Supplemental Opinion and Award issued on May 11, 1978, Arbitrator Linn ruled that he was without power to reopen the arbitration hearing to consider additional medical evidence. In addition, he ruled that he could not address the issue of whether the Grievant had a right to reinstatement to his former job or instatement in any other job in the company.

The precise issue that Arbitrator Linn addressed at the October 17, 1977 hearing was whether Willie Vigil had been discharged without "just cause." In his opinion and award, Arbitrator Linn goes to great pains to emphasize the "callousness" in turning a senior employee out because of disabilities. He suggests that if there is any doubt that the employee could perform his job, or any job for the company, then it is "incumbent on management to secure additional facts to remove that doubt." It

was upon this premise that Arbitrator Linn ordered reinstatement of Mr. Vigil until such time as management had sufficient medical evidence to make that determination. It was the opinion of Arbitrator Linn that at the time of the June 27, 1977 discharge, there was insufficient medical evidence to support the discharge.

The arbitrator did not rule that Mr. Vigil was physically able to be an assistant batt-line operator. He ruled that there was insufficient evidence at the time of discharge to determine that he was not. It is suggested in the opinion and award that upon further investigation of Mr. Vigil's physical capabilities, the parties are in the best position to make the ultimate determination. It is Mr. Vigil who would have to bear the discomfort of any injury, and it is the company which would bear the cost should Mr. Vigil be injured in the performance of his job as an assistant batt-line operator.

In that regard, the opinion suggests to the company that it should consider less strenuous jobs for this employee if it determines he can no longer safely perform the job for which he was hired. However, for purposes of the action taken by the company on June 27, 1977, the award expressly states:

> Under the terms of the Agreement, Article XIII, Section 6, the Company is obligated to *reinstate the Grievant* and to pay to him the "regular rate of pay" for his last regular job classification. (Emphasis added.)

The term "reinstate" is defined in Webster's New Collegiate Dictionary (5th Ed. 1977) as follows: "1: to place again (as in possession or in a former position) 2: to restore to a previous effective state."

On December 1, 1977 Mr. Vigil should have been reinstated to the position of assistant batt-line operator. If, at any time thereafter, the company decided to assign Mr. Vigil to another position, it would have to issue a lawful order effecting the same. Then, in the event of a dispute with regard to any such order, the Collective Bargaining Agreement between the parties would con-

trol and the grievance procedure accordingly commenced. However, the company's refusal to place Mr. Vigil in the position of assistant batt-line operator on December 1, 1977 was in direct contravention of the Opinion and Award issued by Arbitrator Linn.

After an exhaustive review of the arbitration awards, briefs, and affidavits filed in this case, I conclude that defendant Rockwool Industries, Inc. has not complied with the arbitration awards issued by John Phillip Linn on November 21, 1977 and May 11, 1978. Pursuant to these awards, Mr. Vigil is entitled to back pay for the period commencing June 27, 1977 through November 30, 1977, at the "regular rate of pay" of an assistant batt-line operator. In his Supplemental Opinion and Award, Arbitrator Linn determined that this does not include shift differential or overtime pay and that amounts received by Mr. Vigil for Workmen's Compensation would also be subtracted therefrom. Plaintiff is also entitled to back pay for the period commencing December 1, 1977 to the date of compliance with this order for wages which he would have earned if he had returned to his job duties. This includes both shift differential and overtime pay.

In his affidavit, Jack Wetherby, General Manager of Rockwool Industries, Inc., attests that while the company's motion to reopen the record was pending before the arbitrator, Mr. Vigil was to be continued on active pay status and that he was to continue to receive his weekly paycheck based on the current rate of his former job.

Mr. Wetherby further attests that he computed the amounts the company paid Mr. Vigil in satisfying its obligation of back wages under the Arbitration Awards; and that he mailed to Mr. Vigil a check on December 21, 1977 and a second check on June 19, 1978. Each was accompanied with a letter explaining the computations. Mr. Wetherby attests that the check he sent to Mr. Vigil on December 21, 1977 has been cashed but the June 19, 1978 check has not. He also attests that the later check was a revised amount in accordance with the arbitrator's rulings in the Supplemental Opinion and Award. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is granted; and that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff is entitled to back pay at the regular rate of pay of an assistant batt-line operator, excluding shift differential and overtime pay, for the period commencing June 27, 1977 through November 30, 1977. Any amounts received by Mr. Vigil for Workmen's Compensation are to be subtracted therefrom. Plaintiff is entitled to back pay for wages he would have earned if he had returned to his job duties, including shift differential and overtime pay, for the period commencing December 1, 1977 up through and including the date of compliance with this order. Amounts received for Workmen's Compensation, if any, from December 1, 1977 to the date of compliance with this order shall similarly be deducted. *National Labor Relations Board v. Moss Planing Mill Co.*, 224 F.2d 702 (4th Cir. 1955). *See also National Labor Relations Board v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951).

IT IS FURTHER ORDERED that plaintiff is to be reinstated to the position of assistant batt-line operator.

IT IS FURTHER ORDERED that plaintiff's counsel is directed to file a verified itemized statement on or before fifteen (15) days from the date hereof, with a copy thereof to defendant, setting forth the back pay to which plaintiff is entitled in accordance with this order. In the absence of written objections filed within ten (10) days of receipt of the verified itemized statement, judgment will be entered specifying damages. Plaintiff's request for attorney's fees is denied. *International Brotherhood of Electrical Workers, Local No. 12, AFL-CIO v. A–1 Electric Service, Inc.*, 535 F.2d 1 (10th Cir. 1976), *cert. denied*, 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96.