SOBCZAK *v.* KOTWICKI.

1. VENDOR AND PURCHASER—CONSTRUCTION OF AGREEMENT.

Agreement signed by defendant owners and plaintiffs who had had a previous preliminary agreement relative to purchase of the property, *held*, a sales agreement, where it provided for delivery of a warranty deed containing an unencumbered marketable title, consummation of the sale by cash payment within 90 days after delivery of abstract or title insurance policy or by time required to obtain government loan, but that if such loan was not obtainable deposit was to be returned.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 55 Am Jur, Vendor and Purchaser §§ 2, 102–108.
[2] 55 Am Jur, Vendor and Purchaser § 97.
[3, 6] 55 Am Jur, Vendor and Purchaser § 118.
[4] 55 Am Jur, Vendor and Purchaser §§ 111–114.
[5] 49 Am Jur, Specific Performance § 2.

2. Contracts—Construction—Intent.

A contract must be construed so as to effectuate the intent of the parties when it was made; and, to ascertain such intent, the contract should be construed in the light of the circumstances existing at the time it was made.

3. Vendor and Purchaser—Time—Tender of Abstract.

Plaintiffs, would-be purchasers, were not in default under sales agreement whereby they had agreed to make payment within 90 days after delivery of abstract, where defendant owners never tendered the abstract for a sufficient length of time to have it examined by someone skilled in the business.

4. Same—Time of the Essence—Construction of Contract.

To have the effect in equity of making time of the essence of a contract for the sale and purchase of land, a stipulation must be clearly expressed, and it must appear that the parties to the contract really intended that the time should be so regarded.

5. Specific Performance—Contracts—Jurisdiction of Equity.

The jurisdiction of equity in specific performance proceeds on the supposition that the parties have not only agreed, as between themselves, upon every material matter, but that the matters so agreed on are of such a nature, and the subjects of enforcement so delineated or indicated, either directly or by reference to something else, or so raised to view by legitimate implication, that the court can and may collect, and in their proper relations, all the essential elements, and proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed.

6. Same—Time—Tender of Abstract.

Specific performance of sales agreement as to house and lot will not be denied for delay involved by plaintiff veteran in securing a government loan, where both the preliminary agreement and the sales agreement provided for closure of transaction upon obtaining a government loan and defendant owners never tendered an abstract for a sufficient length of time to permit its examination by attorney for the government loaning agency.

Appeal from Alpena; Glennie (Philip J.), J. Submitted October 2, 1956. (Docket No. 8, Calendar No. 46,772.) Decided December 6, 1956.

Bill by Stanley D. Sobczak and Helen Sobczak against Leo T. Kotwicki and Margaret Kotwicki for specific performance of contract to sell real property. Decree for plaintiffs. Defendants appeal. Affirmed.

*Donald K. Gillard,* for plaintiffs.

*Isadore Isackson,* for defendants.

KELLY, J. The circuit court for the county of Alpena decreed that defendants deliver to plaintiffs a deed of conveyance, and defendants appeal.

Defendants owned a home on the outskirts of Alpena and listed the property for sale with an Alpena real-estate broker. The sale price was increased from $7,600 to $8,400 at the broker's suggestion.

A preliminary agreement was prepared by the real-estate broker, and signed on July 15, 1953, whereby defendants agreed to sell the property and plaintiffs agreed to purchase:

"And to pay therefor the sum of $8,400, upon the following terms and conditions: $400 upon the signing of this agreement, receipt of which is hereby acknowledged to apply on the purchase price, the same to be returned should proposition be rejected by owner, or prior sale, of said property; or should the title be found unmarketable; the balance to be paid as follows: in cash upon closing of a G. I. loan in the attorney office.

"Possession to be given after October 15, 1953, or upon closing of this loan."

The real-estate broker signed Stanley Sobczak's name to the preliminary agreement. The broker testified:

"When I drafted the preliminary agreement dated July 15, 1953, to which agreement I signed Sobczak's name, the understanding was that the veteran would

first have to apply for the loan. We didn't know how long the veteran would have to wait. Sometimes we have to wait as high as 4 months for the application to come in. In other words what I mean is that sometimes we have to wait at least 4 months just to get the thing started. * * *

"It was clear to the defendants that this was a veterans administration loan and I explained to the defendants as to what the requirements of the veterans administration were before the loan could be given. This was all agreeable to the defendants. At the time I was at the defendants' home they were in the process of building a new home and they said that if it took a little while longer it would be to their advantage because they would not have to move out of the home that they were selling."

The veterans administration requires a Burton Abstract Company agreement form, and this form, consisting of 11 paragraphs, was signed by plaintiffs and defendants on September 5, 1953. Paragraphs 2 and 7 of the agreement are important. They read, respectively:

"2. Delivery of the usual warranty deed conveying an unencumbered marketable title. Payment of purchase money to be made in cash or certified check. Purchaser agrees that if he is to finance this transaction by obtaining a mortgage, he will do so at his own expense within 90 days from the acceptance of this offer. Sale with mortgage to veterans administration 310 East Jefferson ave., Detroit 32, Michigan.

"7. If a marketable title can be conveyed, the sale shall be consummated within 90 days after delivery of such abstract or policy. If an abstract is furnished and an objection is made to title, and notwithstanding, a title insurance, insuring the title in the condition required by this offer, can be obtained, the sale shall be consummated within 90 days after delivery of such policy; however, if sale is to be consummated in accordance with paragraph 2, then the closing

shall be governed by the time required for obtaining a mortgage."

The concluding paragraph of the agreement, under paragraph 11, is as follows:

"Additional conditions, if any: It is hereby understood between the parties to this contract as follows: In the event the said purchaser is unable to secure a veterans administration loan the said deposit shall be returned to the purchaser within 30 days following such notice by the veterans administration."

Defendants being very desirous that the loan be approved made repairs to the roof of the property and installed a new septic tank when advised that these improvements might expedite the veteran's loan.

In December, 1953, the veterans administration's Detroit office advised the real-estate broker that the loan was approved and defendant Leo Kotwicki admitted he listened to such conversation on an extension phone. He testified: "I don't know as I did agree to any extension of time at that time. I can't recall."

On January 17, 1954, defendants sent the following letter to plaintiffs:

"We have decided not to sell our home and 1 acre of land according to agreement signed on 9/5/53.

"Yours truly,
"Mr. and Mrs. Leo T. Kotwicki."

Previously, on January 6, 1954, defendants' attorney made an unsuccessful effort to obtain plaintiffs' consent to call the deal off, and plaintiff Mrs. Sobczak testified:

"My husband said he wouldn't back out because we needed the home and that Mr. Kotwicki had the home for sale a long time and he had a long time to decide whether he wanted to sell it."

Defendant Leo Kotwicki then went to plaintiffs' home and Mrs. Sobczak testified in regard to that visit as follows:

"Mr. Kotwicki came once more to the house and said, 'Mrs. Sobczak, I will offer you $500 if you back out,' and my husband said, 'No, I won't do it; we need the house and like it very much.' So Mr. Kotwicki went home and that was that.

"*Q.* Did he give you any reason for wanting to pay you $500 and have you back out? What reason did he give you for that?

"*A.* Well, because Mr. Kotwicki said to me at that time when they were signing the papers his wife she didn't know what she was doing, because she was very upset over her mother's death and she didn't know what she had done. But after all, she did sign the papers. 'She was too nervous to think about everything what she was doing.' *   *   *

"*Q.* It was because of his wife not wanting to sell that he was offering you $500?

"*A.* That is right.

"*Q.* He at no time said anything about your time running out, or anything like that?

"*A.* No. He said to me, 'Here it is such a long time, and my wife she liked that home, because she was born on that farm and she was raised over there, and at that time when she signed the papers she really didn't know what she was doing.' "

On January 29, 1954, plaintiffs were notified that their loan had been approved and that the requested amount had been assigned to the veterans administration's attorney, George M. Holmes, of Alpena, with instructions to make title examination and close the transaction.

The plaintiffs, the real-estate broker and Mr. Holmes unsuccessfully endeavored to secure the abstract from defendants. With the approval of the veterans administration's Detroit office, Mr. Holmes ordered from the abstract company of Alpena, a

new abstract. This abstract was obtained; title approved, and the Detroit office forwarded a check for $8,200. A deed and this check were offered to, and refused by, defendants.

Appellants contend that the question presented is whether the agreement of September 5, 1953 (exhibit B), is an option or a sales agreement. They state:

"If it is an option, then obviously time is of the essence and we need no law to argue that point. If it is a sales agreement then was time of the essence and if time was not of the essence, would the agreement have to be performed within a reasonable period of time?"

We agree with the trial court's conclusion that exhibit B is a sales agreement and not an option.

Was time of the essence and were plaintiffs precluded from specific performance because the money was not paid to defendants within 90 days after September 5, 1953, when the agreement was entered into?

Defendant Leo Kotwicki had been a successful businessman in Alpena for many years. The defendants made no reference to the 90-day provision in their notice of cancellation to plaintiffs on January 17, 1954, and they did not refute Mrs. Sobczak's testimony that the cancellation was because Mrs. Kotwicki had decided she did not want to sell. Mrs. Kotwicki did not testify, and the only excuse given for her absence in court was that she was "too nervous" to testify.

Mrs. Sobczak testified that in February, after the expiration of the 90-day period, Mr. Kotwicki called at her home and asked permission to take some of the trees from the premises plaintiffs had purchased and, also, asked for the privilege to buy back 1/2 acre of land and suggested that March would be a good time for plaintiffs to move in "when it warms up."

In *Kunzie* v. *Nibbelink,* 199 Mich 308, 314, this Court said:

"It is elementary that a contract must be construed so as to effectuate the intent of the parties when it was made; and, to ascertain the intent of the parties, a contract should be construed in the light of the circumstances existing at the time it was made."

Paragraph 7 of the agreement provided that: "If a marketable title ·can be conveyed, the sale shall be consummated within 90 days after delivery of * * * abstract." There is no doubt that marketable title could have been conveyed. This paragraph 7 must be considered along with paragraph 2 in determining the intent of the parties.

While the preliminary contract would not control, appellants admit that it must be considered in construing paragraphs 2 and 7 of the agreement (exhibit B). The preliminary contract placed no time limit except to provide that the balance due was to be paid upon the "closing of a G.I. loan." The record sustains the trial court's statement that:

"The evidence discloses that defendants delivered the abstract to their agent, Walter Idalski, for the purpose of having a complete description inserted in exhibit B. The abstract was returned to defendants by their agent on October 5, 1953. No further tender of the abstract was made to plaintiffs until after plaintiffs had received their letter advising that a loan had been approved, which letter was dated January 29, 1954. At that time, defendants delivered the abstract to plaintiffs but insisted it be returned the following day, which request was complied with by plaintiffs. It is apparent that this was insufficient time for veteran plaintiff to have the abstract properly examined to determine whether there was a merchantable title.

"A provision of the contract with reference to an abstract showing merchantable title fairly construed

in the light of the context was that defendant should furnish such an abstract and that plaintiff should have a reasonable time thereafter to have it examined by someone skilled in the business before plaintiffs were obligated to pay the $8,400. It was a condition precedent. This defendants did not do. The fact remains that the abstract was never properly tendered to plaintiffs. Until the abstract was tendered, plaintiffs were not in default. On this state of facts, defendants could not have enforced specific performance."

Defendant Kotwicki's doubts as to his right to refuse conveyance to plaintiffs is disclosed by his testimony, as follows:

"I went to Mr. Holmes' office, I think in December and the first part of January to see when the loan was going to be finished. I asked Mr. Holmes whether the agreement was still binding. I wasn't sure myself. From what he told me I thought it was binding. He told me to show the abstract to the Sobczaks and then I could cancel the contract. It was with the idea of getting a cancellation of this contract that I took the abstract over to the Sobczaks. I told them they could have it 2 or 3 days to check it over."

Mr. Holmes' testimony did not confirm that of defendant Kotwicki. Mr. Holmes testified:

"*Q.* Now, you told Leo that he could either break the contract and subject himself to damages, or he could comply with it, isn't that right?

"*A.* Yes. In my opinion it was still an enforceable contract. I don't recollect whether we ever discussed the abstract. We may have. At that time I really wasn't authorized to do anything. When Leo Kotwicki came to me in January I do not recall any discussion about an abstract."

The legal principle to be applied to the facts in this case is briefly but clearly set forth in 55 Am Jur, Vendor and Purchaser, § 112, p 588, as follows:

"To have the effect in equity of making time of the essence of a contract for the sale and purchase of land, a stipulation must be clearly expressed, and it must appear that the parties to the contract really intended that the time should be so regarded."

In *McDonald* v. *Scheifler,* 323 Mich 117, 125, 126, we said:

"The jurisdiction of equity in specific performance proceeds on the supposition that the parties have not only agreed, as between themselves, upon every material matter, but that the matters so agreed on are of such a nature, and the subjects of enforcement so delineated or indicated, either directly or by reference to something else, or so raised to view by legitimate implication, that the court can and may collect, and in their proper relations, all the essential elements, and proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed."

The record discloses that from the time the preliminary agreement was signed by defendants to the time the deed and check were tendered to them, both plaintiffs and the real estate broker did everything within their power to close the transaction at the earliest possible moment.

Construing the agreement in the light of the circumstances existing at the time it was made, we agree with the trial court's finding that both parties agreed that the money should be paid to defendants and conveyance be made to plaintiffs upon approval of defendants' title after the veteran's loan was approved. Defendants cannot complain about the additional time required because of their refusal to

give the veterans administration's attorney the abstract for title examination.

Decree for specific performance affirmed.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, CARR, and BLACK, JJ., concurred.

BOYLES, J., took no part in the decision of this case.