BOYCE F. MARTIN, Jr., Circuit Judge,
dissenting.
The majority concludes that the Continental Casualty insurance policy at issue in this case is unambiguous and that the policy does not cover the costs of settling the Finley suit. Because this holding contradicts principles of contract law that are well-established in Michigan jurisprudence, I dissent from the majority’s reversal of the district court’s well-reasoned opinion.
I.
On June 22, 2000, Frederick Finley, his girlfriend, her daughter, and a friend with two minor sons visited the Lord & Taylor department store in the Fairlane Town Center in Dearborn, Michigan. While they were in the store, Lord & Taylor’s security personnel allegedly saw at least one of the minors shoplift items. As the group left the building and approached their parked car in the Fairlane parking lot, Lord & Taylor’s security agents confronted them, allegedly accosting an accused minor. Finley, who was ahead of the group, rushed back to come to the minor’s aid and allegedly assaulted the security officials. When he did, the security officials apparently knocked him to the ground and choked him with a gold chain Finley wore around his neck. As a result of the altercation, Finley died. Finley’s estate filed a wrongful-death suit against Lord & Taylor, the insured, and Fairlane, which settled for more than $3 million. Continental Casualty, the insurer, now denies that it owes coverage, thus making a brief history of the insurance policy and its terms of coverage necessary.
Lord & Taylor, an operating division of May Department Stores, first became a party to the Fairlane Town Center’s Operating Agreement on November 9, 1978. Paragraph 12(C) of the Operating Agree *769 ment describes the insurance that is to be secured by the parties jointly. Paragraph 12(C) states in relevant part:
The parties hereto each agree that they will, jointly, commencing with the completion of the Common Areas on their respective Sites and at all times and continuously thereafter maintain general public liability insurance against claims on account of bodily injury or death and property damage occurring upon, in, on, or about the Common Areas (excluding Developer’s buildings, including the Mall, and each of the other parties’ buildings) on the Total Property....
(emphasis added). The district court found that “Common Areas” includes, among other areas, the parking lots outside the stores of the Town Center, including the parking lot where Finley’s death occurred.
Pursuant to the Joint Operating Agreement, Fairlane, the developer, through the Gallagher Pipino Agency, obtained an insurance policy from Continental. When drafting the Continental policy, the Gallagher Pipino Agency assumed that the stores of the mall owned the parking lots allocated to the stores, while, in actuality, Fairlane owned the lots. Consequently, the Continental policy contains a “Common Areas” endorsement that reads:
LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT, CG 2144, IS HEREBY AMENDED FOR LIABILITY ARISING OUT OF THE EXTERIOR COMMON AREA OWNED BY THE NAMED INSURED [Lord & Taylor], IN COMPLIANCE WITH THE JOINT OPERATING AGREEMENT AND/OR RECIPROCAL EASEMENT AGREEMENT IN EFFECT.
(emphasis added). Another endorsement (“Ownership Endorsement”) to the policy reads:
This insurance applies only to “bodily injury”, “property damage”, “personal and advertising injury” and medical expenses arising out of:
1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.
(emphasis added).
Thus, the central issue in this case is whether the Continental policy covers the costs of settling the Finley dispute. On March 14, 2008, the district court ruled that Continental was obligated to indemnify Lord & Taylor and its supplemental insurance company Federal $3,461,967.03 for the payments made in settlement of the Finley matter. In reaching its decision, the court held that the Common Areas Endorsement of the Continental policy was ambiguous because it suggests conflicting coverage guidelines. While the Common Areas Endorsement states that policy only covers “liability arising out of the exterior common area owned by” Lord & Taylor, the very next sentence states that the amended policy is “in compliance with the Joint Operating Agreement,” which requires the parties to maintain insurance jointly to cover claims of injury “occurring upon, in, on, or about the Common areas,” including parking lots owned by the developer Fairlane. Finding that the policy could not do both, the court construed the ambiguity in favor of the insured and looked to extrinsic evidence in finding that it was the intent of the parties to include coverage of injuries such as those sustained by Finley. The court also rejected Continental’s argument that the liability in the Finley matter did not “arise out of’ the common area, noting Michigan courts’ broad interpretation of similar contractual language.
*770 On appeal, Continental claims that the language of the policy agreement is not ambiguous and, under the Common Areas Endorsement, covers only the “COMMON AREA OWNED BY THE NAMED INSURED [Lord & Taylor].” Because the parking lot where Finley died is actually owned by the developer Fairlane and not Lord & Taylor, Continental argues that it is not responsible to the insured under the policy. Alternatively, Continental argues that even if the Common Areas Endorsement does not preclude liability for accidents occurring in the parking lot, it is not obligated because there is no direct causal connection between the condition of the parking lot and the injury to Finley, which, it claims, is required under the policy.
II.
On appeal from a district court judgment entered following a bench trial, this Court reviews the lower court’s legal conclusions de novo. Schroyer v. Frankel, 197 F.3d 1170, 1173 (6th Cir.1999). The district court’s factual findings, however, are reviewed for clear error. Pressman v. Franklin Nat’l Bank, 384 F.3d 182, 185 (6th Cir.2004).
The parties concede that Michigan law applies to the present case. Under Michigan law, an insurance contract must be enforced according to its terms if those terms are unambiguous. Henderson v. State Farm Fire & Cas. Co., 460 Mich. 348, 596 N.W.2d 190, 193 (1999). Although parol evidence is not admissible to alter an unambiguous contract, it is well-established that parol evidence is admissible to prove the existence of an ambiguity or the intent of the parties if the proffered parol evidence is not inconsistent with the written terms. See, e.g., Am. Anodco, Inc. v. Reynolds Metals Co., 743 F.2d 417, 422 (6th Cir.1984) (citing Goodwin, Inc. v. Orsen E. Coe Pontiac, Inc., 392 Mich. 195, 220 N.W.2d 664, 671 (1974)). While “reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings,” ambiguous terms of an insurance policy must be construed in favor of the insured. Henderson, 596 N.W.2d at 194.
A.
The threshold question therefore is whether the Continental policy is ambiguous. Under Michigan law, “[a]n insurance contract is ambiguous when its provisions are capable of conflicting interpretations.” Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel, 460 Mich. 558, 596 N.W.2d 915, 919 (1999). In my view, the district court was correct to hold that the policy’s language stating its compliance with the Joint Operating Agreement, coupled with the terms of that Agreement, makes the policy “capable of conflicting interpretations,” and thus ambiguous, under Michigan law. The Common Areas Endorsement reads as follows:
LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT, CG 2144, IS HEREBY AMENDED FOR LIABILITY ARISING OUT OF THE EXTERIOR COMMON AREA OWNED BY THE NAMED INSURED [Lord & Taylor], IN COMPLIANCE WITH THE JOINT OPERATING AGREEMENT AND/OR RECIPROCAL EASEMENT AGREEMENT IN EFFECT.
(emphasis added). There is no doubt that, as the majority suggests, the first part of the Common Area Endorsement suggests that coverage is limited only for liability “arising out of’ the areas owned by Lord & Taylor. If that were the only clause in the Endorsement, I would likely agree with the majority that the policy is unambiguous. Importantly, however, the Endorsement goes further. In fact, the same sentence goes on to specify that the policy is amended “IN COMPLIANCE WITH *771 THE JOINT OPERATING AGREEMENT.” Because the Endorsement expressly claims to be in compliance with the Joint Operating Agreement, Michigan law permits the consideration of parol evidence, such as the terms of the Joint Operating Agreement in this case, to determine whether an ambiguity in the policy’s terms exists. See, e.g., Meagher v. Wayne State Univ., 222 Mich.App. 700, 565 N.W.2d 401, 415 (1997) (noting that parol evidence “may be admissible to prove the existence of an ambiguity and to clarify the meaning of an ambiguous contract”) (citing Goodwin, 220 N.W.2d at 671).
In fact, the terms of the Joint Operating Agreement establish that such an ambiguity exists. Paragraph 12(C) expressly provides that
[t]he parties hereto each agree that they will, jointly, commencing with the completion of the Common Areas on their respective Sites and at all times and continuously thereafter maintain general public liability insurance against claims on account of bodily injury or death and property damage occurring upon, in, on, or about the Common Areas (excluding Developer’s buildings, including the Mall, and each of the other parties’ buildings)----
(emphasis added). Thus, the language of the Joint Operating Agreement contradicts the language provided in the Common Areas Endorsement by requiring insurance to be provided for common areas owned by the developer Fairlane, including the parking lot where the Finley incident occurred. Therefore, because the language in the Continental policy is “capable of conflicting interpretations” as to whether the costs of the Finley settlement are covered, Michigan law requires a finding that the policy is ambiguous.
The next task in interpreting the Continental policy is to resolve the ambiguity discussed above. As this Court has noted,
“[a] Court’s primary responsibility in construing a Michigan contract is to ascertain and enforce the intent of the parties.” Wonderland Shopping Ctr. Venture Ltd. P’ship v. CDC Mortgage Capital, Inc., 274 F.3d 1085, 1092 (6th Cir.2004) (citing Rasheed v. Chrysler Corp., 445 Mich. 109, 517 N.W.2d 19, 29 n. 28 (1994), and Zobczak v. Kotwicki, 347 Mich. 242, 79 N.W.2d 471, 475 (1956)). I am convinced that the district court was correct to conclude that the ambiguous insurance policy covers the parking lot where the Finley death occurred. The district court found that the parties intended the policy to comply with the terms of the Joint Operating Agreement for several reasons, including the Common Areas Endorsement’s express statement that it was to comply with the terms of the Joint Operating Agreement. I can find nothing in the record suggesting that this finding was erroneous. Moreover, this Court is required by Michigan law to construe any ambiguity in favor the insured, Lord & Taylor. See, e.g., Hellebuyck v. Farm Bureau Gen. Ins. Co. of Mich., 262 Mich.App. 250, 685 N.W.2d 684, 686 (2004). Thus, in my view, the parking lot where the Finley accident occurred was intended to be covered by the Continental policy.
B.
The majority’s approach in concluding that the Continental policy is unambiguous is misguided for several reasons. First, the majority concludes that “[t]he Policy’s reference to the Joint Operating Agreement alone does not make the Policy ambiguous.” Maj. Op. at —. If the policy merely referred to the Agreement, as the majority suggests, perhaps I would consider their interpretation of the policy to be justified. However, the policy does more than just refer to the Joint Operating Agreement — it expressly provides that the policy is amended “IN COMPLIANCE *772 WITH THE JOINT OPERATING AGREEMENT.” In light of the terms of the Joint Operating Agreement, with which the policy is supposed to comply, the district court was correct to conclude that under Michigan law the policy is ambiguous.
Second, in holding that the language of the policy is unambiguous, the majority’s interpretation of the policy essentially “reads out” of the policy the language specifying the policy’s intended compliance with the Joint Operating Agreement. This approach violates the well-established rule under Michigan law that “courts must give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.” Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 663 N.W.2d 447, 468 (2003). The Michigan Supreme Court has stated very clearly that “courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity.” Id. at 467. Simply put, the majority’s interpretation of the policy renders the “IN COMPLIANCE WITH THE JOINT OPERATING AGREEMENT” language nugatory, thus violating one of the most basic principles of Michigan contract law.
Perhaps recognizing this fact to be an unfortunate yet unmentionable consequence of their interpretation of the policy, the majority does not expressly claim, as Continental does in its brief, that the Joint Operating Agreement language is “meaningless surplusage.” Continental argues that the language is “meaningless surplusage” and therefore does not create ambiguity justifying the district court’s reference outside the four corners of the contract under Michigan law. In support of this argument, Continental cites Michigan Township Participating Plan v. Pavolich, 232 Mich.App. 378, 591 N.W.2d 325, 331 (1999), in which a Michigan Court of Appeals considered a “sloppily and inartfully drafted” insurance policy that expressly referred to a village as the insured party, but elsewhere referred to “you or any family member” in defining the insured parties. An employee of the village claimed that the “you or any family member” language indicated that the policy insured him as an employee of the village. Id. The court rejected the claim, holding that the “you or any family member” language was “mere surplusage” and did not create any ambiguity. Id.
Pavolich, however, is clearly distinguishable from the present case because it involved what the court considered to be a “standard policy, which was not tailored to the needs of the village.” Id. The case before this Court, however, presents an entirely different situation. The alleged “surplusage” in the present case is not “standard” contractual language that was mistakenly left in the policy. Rather, it is additional language specifically added for this particular client. The fact that this language is client-specific further underscores the extent of the majority’s error in disregarding the language specifically stating the policy’s intended compliance with the Joint Operating Agreement.
Third, Continental also argues, and the majority appears to agree, see Maj. Op. at -, that the district court should not have considered the terms of the Joint Operating Agreement in finding that the policy was ambiguous because the Continental policy had an integration clause. The integration clause, contained in the Continental policy, provides: “This policy contains all the agreements between you and us concerning the insurance afforded.” Continental claims that such a clause prevents a court from considering extrinsic evidence even where, such as here, such evidence is offered to show the existence of an ambiguity in the contract.
*773 The fact that the policy contained an integration clause merely makes the parol evidence rule applicable in this case. See, e.g., Am. Anodco, Inc., 743 F.2d at 422 (noting that under Michigan law “before the parol evidence rule may be invoked there must be a finding that the parties intended the written instrument to be a complete expression of their agreement”). As established above, Michigan’s parol evidence rule expressly allows the consideration of extrinsic evidence to prove the existence of an ambiguity or the intent of the parties as long as the proffered parol evidence is not inconsistent with the written contract terms. See, e.g., Goodwin, Inc., 220 N.W.2d at 671; see also Turner Const. Co. v. Robert Carter Corp., 162 F.3d 1162, 1998 WL 553009, at *6 (6th Cir. Aug. 17, 1998) (unpublished table opinion) (noting that even though the contract at issue contained an integration clause, the parol evidence rale in Michigan “nonetheless permitted] extrinsic evidence to demonstrate the existence of an ambiguity”). Neither Continental nor the majority cites any authority establishing that extrinsic evidence, such as the terms of the Joint Operating Agreement, is somehow inadmissible in this case merely because the policy contained an integration clause.
Finally, in support of its conclusion that the policy language is not rendered ambiguous by the terms of the Joint Operating Agreement, the majority concludes that “Continental policy’s provision of coverage only for common areas owned by Lord & Taylor does not conflict with the Joint Operating Agreement’s requirement that Lord & Taylor obtain insurance coverage for all common areas.” That the policy and the Joint Operating Agreement can, in the majority’s view, somehow be harmonized as “compatible,” Maj. Op. at -, does not answer the question before us. The issue here is whether the policy is “capable of conflicting interpretations,” or “may reasonably be understood in different ways,” Nikkei, 596 N.W.2d at 919 (emphasis added), and thus ambiguous, not whether the policy can be purportedly reconciled with the terms of the Joint Operating Agreement. See id.; accord Klapp, 663 N.W.2d at 453. For the aforementioned reasons, I would conclude that under Michigan law the insurance policy here “is reasonably susceptible to more than one meaning.” Raska v. Farm, Bureau Mutual Ins. Co. of Mich., 412 Mich. 355, 314 N.W.2d 440, 441 (1982). Michigan courts have “no patience with attempts by a paid insurer to escape liability by taking advantage of an ambiguity, a hidden meaning, or a forced construction of the language in a policy, when all question might have been avoided by a more generous or plainer use of words.” Hooper v. State Mut. Life Assurance Co., 318 Mich. 384, 28 N.W.2d 331, 334 (1947). Unfortunately, this is precisely what the majority allows the insurer to do in this case. Therefore, in my view, the district court was correct to find that the contract is ambiguous and, for the reasons stated above, to construe the ambiguity in favor of Lord & Taylor.
III.
Continental also argues on appeal that the policy only provides for indemnity for liabilities causally connected to the condition, ownership, maintenance, or use of the parking lot and therefore the district court erred in holding it liable in the Finley settlement. The Ownership Endorsement provides: “This insurance applies only to ‘bodily injury’ ... arising out of ... [t]he ownership, maintenance or use of the premises shown.... ” Because the insured property was the “mere situs” of the injury, and did not cause the injury, Continental claims that it is not liable.
In light of the breadth of the language included in the Continental policy, I would conclude that the district court was correct *774 to find that the liability in this case falls within the coverage of the Continental policy. As this Court has pointed out before in interpreting Michigan insurance law, “the term ‘arising out of is ‘ordinarily understood to mean “originating from[,]” ’ ‘having its origin in,’ ‘growing out of or ‘flowing from’ or in short, ‘incident to or having a connection with.’ ” Assurance Co. of Am. v. J.P. Structures, Inc., 132 F.3d 32, 1997 WL 764498, at *5 (6th Cir. Dec. 3, 1997) (unpublished table opinion) (quoting Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co. of Wis., 189 F.2d 374, 378 (5th Cir.1951)); accord Kmart Corp. v. Fireman’s Fund Ins. Co., 88 F.Supp.2d 767, 773 (E.D.Mich.2000) (citing Assurance Co. and noting broad definition of “arising out of’ in applying Michigan law). In my view, the law’s broad interpretation of the phrase “arising out of’ in the context of general liability insurance compels the conclusion that the Finley death arose out of “the ownership, maintenance or use of’ the Fairlane parking lot. This interpretation also comports with the terms of the Joint Operating Agreement, with which the policy is clearly intended to comply, broadly requiring Lord & Taylor to obtain insurance for bodily injuries and death “occurring upon, in, on or about the Common Areas,” such as the parking lot where the Finley incident occurred.
This reading of the policy is further supported by the fact that the Michigan Supreme Court has rejected an argument similar to that asserted by Continental. In Frankenmuth Mutual Insurance Co. v. Piccard, 440 Mich. 539, 489 N.W.2d 422, 424-25 (1992), abrogated on other grounds, Frankenmuth Mut. Ins. Co. v. Masters, 460 Mich. 105, 595 N.W.2d 832, 839 n. 8 (1999), the court interpreted a similar commercial liability policy that limited coverage to those events “arising out of the ownership, maintenance or use of the insured premises.” The insured, Charles Piccard, intentionally started a fire on his business premises, resulting in damage to his property. Id. at 424. The insurance company claimed that coverage was precluded by the terms of the policy because “arson [was] not attendant to the ‘ownership, maintenance or use’ of the insured’s business.” Id. at 425. The court expressly rejected that argument, noting that “the phrase ‘ownership, maintenance or use’ is used by the insurer to define the subject matter and the nature of the risk assumed. In other words, the risk covered by the commercial liability insurance issued to Piccard was limited to those events that occurred on or at the premises of his business.” Id. (footnote omitted). Thus, the court held that “the scope of the policy, and the risk that it covers, applie[d] to Piccard because the fire occurred at his business.” Id. (citations omitted).
Applying the Piccard reasoning to this case further supports the conclusion that the Continental policy covers the costs associated with settling the Finley manner. Lord & Taylor, like Piccard, obtained a general premises liability policy to cover injuries “arising out of the ownership, maintenance or use of’ the insured premises. Moreover, the Michigan Supreme Court seemingly interpreted that language not to require a direct casual relationship between the premises and the injury; rather, the court expressly held that such language covered the damage resulting from the fire set by the insured “because the fire occurred at [the insured’s] business.” Consequently, I can see no good legal reason why the similar language used by the Continental policy in the present case should be interpreted differently.
The primary case that Continental cites in support of its claim that a direct causal relationship is required under this policy is Thornton v. Allstate Insurance Co., a case decided before Piccard, which involved a *775 Michigan no-fault automobile insurance statute limiting coverage to injuries “arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle.” 425 Mich. 648, 391 N.W.2d 320, 322 (1986) (quoting Mich. Comp. Laws § 500.3105(1)). In my view, Thornton does not control the question presented in the present case. First, Thornton’s applicability in this context is questionable because it involved the interpretation of a no-fault automobile insurance statute, not a premises liability policy. Automobile policies are certainly intended to be less comprehensive than general premises liability insurance contracts such as the one in the present case.
Second, the Thornton court made very clear that its decision was premised on specific limiting language found in the no-fault statute that is noticeably absent here. The Michigan no-fault statute limited benefits to injuries “arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle.” Id. (quoting Mich. Comp. Laws § 500.3105(1)) (emphasis added). The court concluded that the language limiting benefits to those injuries resulting from the use of a motor vehicle “as a motor vehicle” “shows that the Legislature ... chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or ‘but for.’ ” Id. Unlike the language in Thornton, the Continental policy at issue here contains no such limiting language. Instead, the Continental policy broadly provides for coverage “arising out of the ownership, maintenance or use of the premises.” If Continental wanted to limit its liability to situations in which the injury is directly caused by the premises, it obviously could have done so. In this case, however, it did not.
Thus, for these reasons, I would conclude that the district court was correct in finding that the costs associated with the Finley dispute are within the broad terms of the Continental policy.
IV.
In sum, I would hold that the Continental policy is ambiguous because of the policy’s express statement that it was amended to comply with the Joint Operating Agreement and because of the terms of that Agreement. In light of the evidence in this case, I would construe that ambiguity in favor of the insured Lord & Taylor and hold that the costs of the Finley settlement are covered under the Continental policy. I therefore respectfully dissent.