NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0521n.06

Case No. 16-2365

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| WAL-MART REAL ESTATE BUSINESS TRUST, | ) ) ) | **FILED**<br>Sep 08, 2017<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE WESTERN<br>DISTRICT OF MICHIGAN |
| EASTWOOD, LLC; EASTWOOD HOLDINGS, LLC, | ) ) ) | |
| Defendants-Appellants. | ) ) ) ) ) | **OPINION** |

**BEFORE: GIBBONS, ROGERS, and DONALD, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** In this real estate dispute between lessors Eastwood, LLC, and Eastwood Holdings, LLC, (collectively, "Eastwood") and lessee Wal-Mart Real Estate Business Trust ("Wal-Mart"), Wal-Mart sought to expand its retail store located on Eastwood's property but was unable to do so because Eastwood refused to help obtain the appropriate construction permits. Wal-Mart filed suit and Eastwood counter-claimed, both alleging breach of contract and related claims. The district court granted summary judgment for Wal-Mart and dismissed Eastwood's claims. It also denied Eastwood's motion for sanctions against Wal-Mart for alleged witness tampering.

Ultimately, while the case was still pending before the district court, the parties agreed to voluntarily dismiss all of Wal-Mart's claims without prejudice on the condition that, should Wal-

Mart bring a suit related to these claims in the future, it must pay Eastwood's attorneys' fees and costs. Wal-Mart no longer plans to expand its store at the property owned by Eastwood, and the permits it initially obtained have long expired. However, Eastwood appeals the district court's earlier rulings dismissing its breach-of-contract claim and denying its motion for sanctions, presumably because Eastwood does not want those rulings to have preclusive effect were Wal-Mart to attempt to expand again in the future. For the reasons that follow, we affirm the district court's judgment.

## I.

Wal-Mart leases property at 3225 Towne Center Drive in Lansing Township, Michigan, from Eastwood[1] pursuant to a Ground Lease contract (the "Lease") that has been subsequently amended. The parties disputed the terms of the Lease in 2003, which resulted in a settlement agreement that they incorporated into the initial Lease (the "Amended Lease"). In addition to the amended terms, part of the settlement involved striking numerous provisions from the original Lease. Wal-Mart and Eastwood also incorporated a Declaration of Easements, Conditions, and Restrictions ("ECRs"), signed by Eastwood's predecessor-in-interest in 2001, into the Lease as an exhibit and included various additional exhibits, such as a Master Site Plan and Height Restriction Plat.

Under the terms of the original Lease, Wal-Mart was authorized to construct a retail store on Eastwood's property with the potential for expansion to a Super Center at a later date (the "Eastwood store"). The initial Lease provided that Eastwood would prepare the premises to accommodate a Wal-Mart Super Center of approximately 222,347 square feet, and the initial Master Site Plan proposed a 149,551-square-foot Wal-Mart store. However, when the parties amended the Lease, the new Master Site Plan included a future plan for a 213,234-square-foot

---

[1]The original lease was with Eastwood's predecessor-in-interest, LL&127, LLC.

store, and the section referencing a 222,347-square-foot store was removed. The Material Terms of Settlement incorporated into the Amended Lease contemplated additional future site plans from Wal-Mart, and it included a provision that Wal-Mart would use Eastwood's site plans as a reference when preparing future site plans. The Lease, Amendments, and ECRs do not discuss the effect of any Master Site Plan, how to amend a Master Site Plan, or a procedure for Wal-Mart to follow to propose and enact expansion plans.

In 2008, Wal-Mart sought to expand the size of its Eastwood store. Wal-Mart applied to Lansing Township ("Lansing") for a permit to expand to approximately 194,000 square feet. Wal-Mart ultimately did not pursue this expansion, but at no point did Eastwood object to the proposal.

The present dispute arose in 2013 when Wal-Mart again looked to expand its Eastwood store. Wal-Mart applied to Lansing for site-plan approval to expand its building to approximately 186,000 square feet. The Lansing Planning Commission and Board of Trustees held two public hearings in February 2013 and March 2013 to review Wal-Mart's proposed expansion plans. An Eastwood representative attended the second hearing and asked questions about the proposed expansion size, but did not object to the expansion either orally at that time or later in writing.

Wal-Mart received site-plan approval to expand to 186,000 square feet and subsequently applied to Lansing for a Soil Erosion Sedimentation Control ("SESC") permit, which is required before beginning construction. Lansing denied the permit because Wal-Mart did not own the property and thus did not have the appropriate legal authority to apply for the permit. Wal-Mart sent a written request to Eastwood to help obtain the required SESC permit, but Eastwood never responded to the letter. As a result, Wal-Mart filed suit against Eastwood for breach of contract,

3

claiming that Eastwood, pursuant to the Lease, was required to cooperate in obtaining all necessary government permits. Wal-Mart also sued for declaratory and injunctive relief. Wal-Mart argued that, because of Eastwood's breach, the expansion was delayed and Wal-Mart's site-plan approval from Lansing was at risk of expiring.[2]

Eastwood counter-claimed for breach of contract[3] and fraud, alleging that the proposed expansion was improper under the terms of the Lease because it would expand the store to less than 223,000 square feet.[4] The parties disputed whether the Amendments and the Lease together required that, should Wal-Mart expand, the expansion must result in a pre-determined total-store square footage.

The district court granted Wal-Mart's motion for summary judgment and dismissed Eastwood's counter-claims, finding that even if Eastwood's breach-of-contract claim could survive a motion to dismiss, it could not survive a motion for summary judgment. It also dismissed Eastwood's fraud allegations under Rule 12(b)(6) for failure to state a claim.

The district court first held that Eastwood's breach-of-contract claim was precluded because Eastwood failed to comply with the notice-and-cure provision contained in its Lease with Wal-Mart. Under the Lease, Eastwood was required to send written notice to both Wal-Mart's legal department and its property management office if it suspected a breach, in order to provide Wal-Mart the opportunity to cure the alleged breach. Although it was undisputed that Eastwood did not send notice as required by the Lease, Eastwood argued that filing the counter-

---

[2]Although the Lease outlines a mediation procedure in the event of a dispute, Eastwood would not agree to refer the dispute to the mediator, necessitating Wal-Mart's suit.

[3]Eastwood's breach-of-contract claim was premised, in large part, on a theory of anticipatory repudiation.

[4]It appears that Eastwood approximated the total square footage it believed that the Lease required. Nowhere do the Lease or Amendments contain the number 223,000, and the closest square-footage number, 222,347, was struck from the Lease when it was amended in 2003.

4

claims satisfied any notice-and-cure requirement. The district court rejected this argument and found Eastwood's breach-of-contract claim barred.

In the alternative, the district court held that Wal-Mart was not obligated to expand to a 223,000-square-foot retail store under the Lease and Amendments. As a result, Wal-Mart's conduct could not be an "unequivocal communication of its intent or inability to meet its . . . contractual obligations." It also held that Wal-Mart did not have a duty to provide Eastwood with its proposed site plans, and even if it did, no changes to the site had been made because Wal-Mart was unable to obtain the necessary permits and construction approvals.

Eastwood filed a motion for reconsideration, alleging that the district court's order granting summary judgment for Wal-Mart and dismissing Eastwood's counter-claims should be reversed because: (1) the court applied an incorrect principal of law; (2) the court misconstrued relevant contract provisions; (3) the court erred in determining that no issues of material fact existed; and (4) there was newly developed evidence in light of continuing discovery. The district court denied Eastwood's motion, holding that "the evidence was so one-sided, Wal-Mart was entitled to prevail as a matter of law" because "Eastwood did not demonstrate that a genuine issue of material fact existed on each breach of contract argument." The court maintained that Eastwood's failure to comply with the notice-and-cure provision in the contract precluded its claims and that the remainder of Eastwood's arguments did not compel a different outcome. Eastwood also filed an amended complaint on its fraud claims, which the district court ultimately rejected.

Among the numerous other motions filed in this lengthy dispute was Eastwood's motion for sanctions against Wal-Mart, in which it argued that Wal-Mart had tampered with the testimony of a third-party witness by sending a threatening letter. The district court rejected this

motion as frivolous and invited Wal-Mart to file a motion for Rule 11 sanctions against Eastwood (which Wal-Mart ultimately did not do). When Eastwood moved for reconsideration of its sanctions motion, the district court again rejected Eastwood's motion.

During the course of this litigation, Wal-Mart's site-plan approval from Lansing for the proposed expansion expired. And Wal-Mart's expansion plans also changed: it no longer sought to expand its Eastwood store, nor does it plan to in the future, based on a shifting corporate-business model that focuses on smaller brick-and-mortar stores. As a result, Wal-Mart voluntarily dismissed its claims against Eastwood. Upon dismissal, the district court noted that "[t]he parties agree that this case should be dismissed, but have somewhat differing opinions as to the conditions of dismissal." Wal-Mart sought a dismissal without prejudice, with a condition that any future actions based on claims relating to the site plan be contingent on Wal-Mart paying Eastwood's attorneys' fees and costs. Eastwood agreed to a dismissal of Wal-Mart's claims "without prejudice" as long as the court reinstated all of Eastwood's counter-claims, dismissed those, too, "without prejudice," and ordered Wal-Mart to pay attorneys' fees and costs either in this suit or if Wal-Mart filed a related future action.

The court granted almost all of the proposed conditions. It found a dismissal of Wal-Mart's claims "without prejudice" appropriate, on the condition that if Wal-Mart later re-files an action based on claims that were asserted, or could have been asserted, relating to this site plan, Wal-Mart must pay Eastwood "a reasonable sum for <u>all</u> costs and attorney's fees incurred in the defense of this action." The court did not, however, dismiss Eastwood's claims without prejudice. The case was dismissed on September 6, 2016.

On September 30, 2016, Eastwood filed a notice of appeal. It appeals the district court's earlier order granting summary judgment for Wal-Mart and dismissing Eastwood's counter-

claims, as well as the denial of Eastwood's motion for sanctions against Wal-Mart for alleged witness tampering.

## II.

We review a district court's grant of summary judgment *de novo*. *Great Am. Ins. Co. v. E.L. Bailey & Co.*, 841 F.3d 439, 443 (6th Cir. 2016). Taking the evidence in the light most favorable to the non-moving party, summary judgment is appropriate if the pleadings and other evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere presence of a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence upon which a jury could reasonably find for the non-moving party. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

We review a district court's denial of a motion for sanctions for an abuse of discretion. *See BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010). An abuse of discretion exists if this court has "a definite and firm conviction that the trial court committed a clear error of judgment." *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003) (citation omitted). If a district court chooses one of two permissible views of the evidence, its choice cannot be clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). We will ordinarily affirm the district court's decision as long as the court conducted a sufficient evaluation of the evidence and provided a sufficient rationale for its decision. *See Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 727–28 (6th Cir. 2004).

## A.

Eastwood challenges the district court's grant of summary judgment to Wal-Mart on Eastwood's breach-of-contract claim. Eastwood argues that the district court erred when it found

that Eastwood's contract claims were precluded because of a failure to comply with the Lease's notice-and-cure provision.[5] Eastwood also challenges the district court's interpretation of certain Lease provisions, which ultimately led the court to hold that Wal-Mart's proposed expansion did not violate the Lease.

Under Michigan law, a court's primary obligation when interpreting a contract is to determine the intent of the parties. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003) (citing *Sobczak v. Kotwicki*, 79 N.W.2d 471, 475 (Mich. 1956)). We must "read contracts as a whole and accord their terms their plain and ordinary meaning." *Genesee Foods Servs., Inc. v. Meadowbrook, Inc.*, 760 N.W.2d 259, 263 (Mich. Ct. App. 2008) (citing *Scott v. Farmers Ins. Exch.*, 702 N.W.2d 681, 683 (Mich. 2005)). If the contract's language is unambiguous, then we must "construe and enforce the contract as written." *Quality Prods.*, 666 N.W.2d at 259 (citing *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999)). A contract term is ambiguous if there is more than one reasonable interpretation of the provision. *Island Lake Arbors Condo. Ass'n v. Meisner & Assocs.*, 837 N.W.2d 439, 444 (Mich. Ct. App. 2013) (citation omitted). But disagreement by the parties over the interpretation of contract language does not, by itself, create an ambiguity. *Genesee Foods*, 760 N.W.2d at 263 (citation omitted).

Although somewhat complicated, when pieced together, the Lease, its Amendments, and the ECRs contain clear and unambiguous terms. Eastwood and Wal-Mart provide competing interpretations of the Lease and Amendments, but only Wal-Mart provides a reasonable one.

---

[5]Michigan contract law affords parties the opportunity to condition their right to terminate a contract in the case of a breach by requiring notice and the opportunity to cure. *See Convergent Grp. Corp. v. Cty. of Kent*, 266 F. Supp. 2d 647, 657–58 (W.D. Mich. 2003) (citing *Lichnovsky v. Ziebart Int'l Corp.*, 324 N.W.2d 732, 737 (Mich. 1982)). If parties include a notice-and-cure provision in a contract, "failure to comply with the notice and cure requirements under [an agreement] precludes the [non-breaching party] from maintaining its breach of contract claim." *Id.* at 658. It is undisputed that Eastwood never provided notice to Wal-Mart as required by the Lease. However, because the parties focused at argument on what the Lease provides about Wal-Mart's ability to expand, so do we.

The parties agree that the Lease and its Amendments do not *require* Wal-Mart to expand its store. They disagree only on what Wal-Mart must do *if* it expands. Eastwood argues that the Lease requires that, if Wal-Mart chooses to expand its Eastwood store, any expansion result in a 213,234-square-foot store.[6] Wal-Mart contends that the Lease provides only a ceiling, but did not require it to expand to any particular square-footage.

Even if the original Lease required an expansion to a particular square footage, the parties struck the sole provision containing a square footage requirement when they amended the Lease in 2003. And they replaced the initial Master Site Plan with a revised Master Site Plan. The new Master Site Plan included additional site specifications—the Sam's Club was included on this plan, too, and new square footages were listed. It listed a post-renovation Wal-Mart square footage of 213,234 square feet. But the Amendments did not define the legal ramifications of the Master Site Plan. Nowhere do the Lease, Amendments, or ECRs state that, should Wal-Mart choose to renovate, it may renovate only to the exact specifications in the Master Site Plan.

The ECRs do require, in a subparagraph titled "Location," that "[t]he location of buildings on the Shopping Center be substantially similar to those building footprints set forth on the Master Site Plan." But this provision has nothing to do with the size of an expansion, nor does it reasonably require Wal-Mart to renovate *only* to 213,234 square feet, as Eastwood contends. True, the Material Terms to the Settlement specifically state that Wal-Mart would use Eastwood's site plans as a reference for preparation of future site plans. But this provision requires only that the *location* of any future expansion be selected by reference to the Master Site Plan. It says nothing about the size of a future expansion.

---

[6] On appeal, Eastwood changes its tune and now relies on the Amended Master Site Plan to supply the required expansion square footage, rather than the 223,000-square-foot figure pled in its counter-complaint.

Instead, the amended Master Site Plan appears to serve as the new outer boundaries of Wal-Mart's development. By the parties' express provision, nothing in the Lease requires Wal-Mart to construct or improve on Eastwood's property. And nowhere do the parties explicitly or implicitly agree that the only acceptable expansion is to 213,234 square feet. But nevertheless Eastwood argues that, although Wal-Mart does not have to expand its store, if it does expand, it must expand to 213,234 square feet. To take Eastwood's reading of the Lease to its logical conclusion, Wal-Mart would be prevented from *any* expansion, even a minor 100-square-foot renovation, because it would not expand the store to 213,234 square feet. We find that reading of the Lease to be unreasonable.

Because Wal-Mart's reading of the Lease is the only plausible one, we affirm the district court's grant of summary judgment to Wal-Mart and its dismissal of Eastwood's breach-of-contract claim.

B.

Eastwood also appeals the district court's order denying sanctions against Wal-Mart for alleged witness tampering. During the course of this litigation, Steven Hayward, Lansing Township's Director of Development and Planning, submitted an affidavit in support of Eastwood's claims. In response, Wal-Mart's counsel sent a letter to the Lansing Township Attorney, in which Wal-Mart wrote that Hayward's affidavit contained "erroneous facts and inaccurate opinions . . . directly contrary to prior statements and positions of the Township" and expressed concern that the Township was "intentionally interfer[ing] with Walmart's contractual relationship" with Eastwood. The letter from Wal-Mart also requested a response from the Township Attorney clarifying the Township's position, and asked that the Township withdraw any statement that "contradicts prior written statements and approval of the Township,

10

intentionally interferes with Walmart's contractual relationships, and places new and unlawful conditions on Walmart."

Wal-Mart maintained that this letter was sent in an effort to protect prior approvals it had received from Lansing Township and to clarify the Township's position. The letter was not directed to Hayward, nor did it threaten legal action against Hayward. Nevertheless, Eastwood argued that this letter was sent to threaten and intimidate its third-party witness, and that, as a result, Hayward may not cooperate in the litigation moving forward for fear of the legal repercussions.

In its order denying Eastwood's motion for sanctions, the district court agreed with Wal-Mart's interpretation of the letter. It stated that "Eastwood's characterization of the . . . letter is disingenuous at best and deceitful at worst. No threats of any kind appear in the letter." The district court agreed that the purpose of the letter was "to determine whether Mr. Hayward was speaking on behalf of the Township or not and to determine if the Township had changed its position after prior communications with Wal-Mart. There is nothing threatening or untoward concerning Mr. Hayward in the letter."

The parties' positions regarding the interpretation of the letter remain virtually unchanged on appeal. Based upon an independent review of the letter, the district court's interpretation was reasonable. The letter, by its plain terms, states its purpose: "We would like to understand whether Mr. Hayward's Affidavit represents the position of the Township," and makes clear that Wal-Mart wanted to ensure that "the Court [would] not be confused about whether the Affidavit is an expression of the Township's view of issues related to the Litigation" because Wal-Mart understood Hayward's affidavit, if it represented Lansing's position, to place "new and unlawful conditions on Walmart." Taking these words at their face value, as the district court did, there

was nothing unscrupulous about Wal-Mart's behavior. Thus, the district court did not abuse its

discretion when it denied Eastwood's motion for sanctions.

III.

For the reasons stated above, we affirm the judgment of the district court.